## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLES W. HOLLOWAY, | * | |
| PLAINTIFF, | * | |
| v. | * | Civil Action No. RDB-20-0377 |
| STATE OF MARYLAND, *et al.*, | * | |
| | * | |
| DEFENDANTS. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

Plaintiff Charles W. Holloway ("Plaintiff" or "Holloway") brings this employment discrimination action against Defendants State of Maryland, Maryland Military Department, and Freestate Challenge Academy (collectively, "Defendants"). Plaintiff alleges race-based violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't, § 20-601, *et seq.*[1] Presently pending is Defendants' Motion to Dismiss (ECF No. 4). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 4) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

### BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found.*

---

[1] In his Opposition, Holloway concedes the dismissal of his claims under the Maryland Fair Employment Practices Act. *See infra*.

*v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).   Holloway, an African-American man, is a former employee of Defendant Maryland Military Department, where he first served as the Program Coordinator/Deputy Director of Defendant Freestate Challenge Academy ("Freestate") in 2014 and later as the Program Director of Freestate in 2016.   (Compl. ¶¶ 10-16, ECF No. 1.) Freestate Challenge Academy is a residential educational program for at-risk adolescents aged 16 to 18 years.   (*Id.* ¶ 11.)

When Holloway was first hired to serve as Freestate's Program Coordinator/Deputy Director in 2014, his supervisor was then-Program Director Charles Rose ("Rose"), a white male.   (*Id.* ¶¶ 10-12.)     From 2014 to 2016, Holloway alleges that he received outstanding evaluations from Rose.   (*Id.* ¶ 13.)   In or around June of 2016, Rose was terminated, and Holloway was subsequently assigned to serve as the Acting Program Director of Freestate. (*Id.* ¶¶ 14-15.)  In or around November of 2016, Holloway was promoted to Program Director of Freestate.   (*Id.* ¶ 16.)

While serving as Freestate's Program Director, Holloway alleges that he was discriminated against by the Maryland Military Department's Director of Human Resources, Nicholas Pindale ("Pindale") and the Acting Chief of Staff Jeffrey Teller ("Teller").   (*Id.* ¶¶ 17-62.)   Specifically, Holloway alleges that Pindale was unresponsive for ten months to Holloway's request for review and approval of an attendance policy for Freestate and that Pindale eventually delegated the request to Human Resources Deputy Director Princess Neal Washington, an African-American woman.   (*Id.* ¶ 18.)   Holloway alleges Pindale did not want to interact with Holloway because of his race.   (*Id.* ¶¶ 19-21.)   In addition, Pindale allegedly

asked one of Holloway's subordinates, a white female, if she felt "safe" under Holloway's leadership. (*Id.* ¶ 33.)  Despite Pindale's alleged discriminatory behavior, Holloway asserts that he continued to be a top performer and regularly received outstanding evaluations from then-Chief of Staff Annette Deener ("Deener") from 2016 to 2018. (*Id.* ¶ 22.)  Deener retired in January of 2018 and was replaced by Jeffrey Teller. (*Id.* ¶ 23.)

On or about January 5, 2018, Holloway allegedly discovered that he was being paid approximately $5,000 less than Rose had made as Program Director.  (*Id.* ¶ 26.)  When he notified Pindale of this discovery, Pindale allegedly admitted that Holloway "was not being compensated fairly and that it needed to be addressed immediately."  (*Id.* ¶ 28.)  Pindale allegedly never rectified the situation.  (*Id.* ¶ 30.)  On or about February 1, 2018, Holloway filed an internal complaint with Equal Employment Opportunity ("EEO") Officer Kirsten Williamson for discrimination and harassment/hostile work environment on the part of Pindale. (*Id.* ¶ 31.)  Mediation resulted in an agreement between Holloway and the Defendants but Holloway alleges that the Defendants breached the terms of the agreement.  (*Id.* ¶ 32.)

On or about March 1, 2018, Holloway filed a second internal complaint with EEO Officer Williamson for discriminatory harassment by Pindale.  (*Id.* ¶ 36.)  After another round of mediation resulted in an agreement "in which Mr. Pindale agreed that he would work directly with Mr. Holloway regarding a problem or concern with the Academy," Pindale allegedly breached this agreement.  (*Id.* ¶ 37.)

In or around April of 2018, before a budget meeting, Jeffrey Teller observed police presence on the grounds of Freestate Challenge Academy and contacted Chief of Staff Deener. (*Id.* ¶ 38.)  Deener contacted Holloway to inquire about the situation, expressing concern that

she had not been informed of the police presence.  (*Id.*)  Holloway alleges that Teller's conduct "undermined Mr. Holloway's leadership and hindered his ability to effectively manage the Academy."  (*Id.* ¶ 40.)

In or around May of 2018, Holloway alleges that Teller personally attacked Holloway's leadership and management during a meeting.  (*Id.* ¶ 41.)  Teller allegedly admonished Holloway for not being an effective leader because he was not working with Pindale.  (*Id.* ¶ 42.)  When Holloway attempted to explain that Pindale was the one who refused to work with Holloway, Teller allegedly dismissed Holloway's explanations.  (*Id.* ¶ 43.)  In another incident in May of 2018, Teller allegedly "publicly humiliated and demeaned Mr. Holloway in front of his colleagues and subordinates by purposefully having his name omitted from the employee recognition program, and replacing it with Mr. Pindale's name."  (*Id.* ¶ 47.)

On or about May 25, 2018, Teller allegedly issued Holloway a "fabricated disciplinary performance evaluation alleging that [Holloway] had mismanaged the budget."  (*Id.* ¶ 48.)  Holloway denies any responsibility for the budget, asserting that another officer was actually responsible for budget oversight.  (*Id.* ¶ 49.)  On or about May 29, 2018, Holloway filed a third discrimination complaint with EEO Officer Williamson.  (*Id.* ¶ 53.)

In or around June of 2018, Holloway requested a meeting with Teller to discuss procurement card access and Teller scheduled the meeting at 6:30 a.m., one and a half hours before Holloway reported to work.  (*Id.* ¶ 54.)  At the meeting, Teller allegedly "violently yelled at and berated Mr. Holloway for 35 minutes," told Holloway he was "beneath him" and that "he could only address him as 'sir,'" and "violently slammed documents" against the table.

4

(*Id.* ¶¶ 55-57.)  Teller also allegedly stated that he was aware of Holloway's complaints against Pindale and that Teller "would be involved."  (*Id.* ¶ 58.)

Also in June of 2018, Defendants administered a "climate survey" at Freestate to get "employee input of leadership," which Holloway alleges was never administered during Rose's tenure as Program Director and was not administered in any other departments.  (*Id.* ¶ 59.)  In or around July of 2018, Teller contacted Holloway's subordinates to "question [Holloway's] whereabouts," but did not contact Holloway directly.  (*Id.* ¶ 60.)

On or about August 17, 2018, Holloway's internal EEO complaints resulted in a finding of "no evidence to substantiate his claims."  (*Id.* ¶ 64.)  On or about August 22, 2018, Holloway was terminated for cause based on budget issues from a recent audit in April of 2018 and low enrollment numbers.  (*Id.* ¶ 65; *see also* Termination Letter, ECF No. 6-1[2].)  Defendants replaced Holloway with Karilynn Dunnmeyer, a white female allegedly with fewer years of supervisory experience whom Defendants paid $10,000 more.  (Compl. ¶¶ 77-79.)

The EEOC having determined not to take action on Holloway's complaints, Holloway received a right to sue letter on November 16, 2019.[3]  (*Id.* ¶ 6.)  On February 12, 2020,[4] Holloway filed suit in this Court asserting three causes of action: discriminatory termination (Count I), harassment/hostile work environment (Count II), and retaliation (Count III).

---

[2] Defendants provided Holloway's termination letter, which the Court may consider as integral to the Complaint. *See Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (the court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.").

[3] In Maryland, a deferral state, a claim of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") must be filed with the EEOC within 300 days of the alleged discriminatory action. *EEOC v. R&R Ventures*, 244 F.3d 334, 338 n.1 (4th Cir. 2001).  If the EEOC dismisses the charge, or if the plaintiff requests a right to sue notice, a plaintiff has ninety days from receiving his or her notice of dismissal and right to sue letter to file an action in court.  42 U.S.C. § 2000e-5(f)(1).

[4] Holloway filed this action 88 days after the EEOC's dismissal and issuance of the right to sue letter.

(Compl. ¶¶ 80-98.)  On April 15, 2020, Defendants filed the presently pending Motion to Dismiss.  (ECF No. 4.)

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter [taken as true] to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff cannot rely on bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).  A court, however, is not required to accept legal conclusions drawn from those facts.  *Iqbal*, 556 U.S. at 678.  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the

factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## ANALYSIS

While Holloway initially asserted his claims under both Title VII and the Maryland Fair Employment Practices Act ("MFEPA"), Holloway notes in his opposition that he "is not independently pursuing MFEPA claims; only Title VII." (Pl.'s Opp'n at 23, ECF No. 5-1.)

Accordingly, Holloway's claims under MFEPA will be dismissed with prejudice.[5]  His claims for discriminatory termination (Count I), harassment/hostile work environment (Count II), and retaliation (Count III) under Title VII are addressed below.

## I.      Discriminatory Termination (Count I)

As the United States Court of Appeals for the Fourth Circuit explained in *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745 (4th Cir. 2017), a plaintiff may establish discrimination under Title VII by showing direct or circumstantial evidence that the plaintiff's status in a protected class was a motivating factor in an adverse employment action, or by relying on the burden shifting scheme established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Swaso*, 698 F. App'x. at 747 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213–14 (4th Cir. 2007)).

Where, as here, the record contains no direct evidence of discrimination, a plaintiff's claims must be analyzed under the burden-shifting scheme established in *McDonnell Douglas*. *See Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000).   Under this framework, the plaintiff must first make out a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he was subjected to an adverse employment action; and (4) "the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination' [which can be] met if 'similarly-situated employees outside the protected class received more favorable

---

[5] Holloway's claims under the MFEPA are also barred under the Eleventh Amendment because Maryland and its state agencies have not waived Eleventh Amendment immunity to claims in federal court under the MFEPA.  *See Pense v. Maryland Dep't of Pub. Safety and Corr. Servs.*, 926 F.3d 97, 101-02 (4th Cir. 2019); *see also Middlebrooks v. Univ. of Maryland*, 980 F. Supp. 824, 827 (D. Md. 1997) ("The Eleventh Amendment bars federal courts from hearing claims brought by a citizen against her own state…[t]he block extends to suits against state agencies….").

treatment.'" *Swaso*, 698 F. App'x. at 747 quoting *Adams v. Trs. of Univ. of N.C.-Wilmington*, 640

F.3d 550, 558 (4th Cir. 2011); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce

evidence that the adverse employment action was taken "for a legitimate, nondiscriminatory

reason." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000). Then, the plaintiff is

"afforded the opportunity to prove by a preponderance of the evidence that the legitimate

reasons offered by the defendant were not its true reasons, but were a pretext for

discrimination." *Id.* (quoting *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Holloway has failed to plead a *prima facie* case of discrimination. Defendants do not

dispute that Holloway, an African-American man, is a member of a protected class and that

he was subjected to an adverse employment action when he was terminated. However,

Holloway has not pled facts reflecting that he was performing satisfactorily at the time of his

termination, despite his assertion to the contrary. In his Complaint, Holloway confirms that

he was terminated on August 22, 2018 for cause based on budget issues from a recent audit in

April of 2018 and low enrollment numbers. (Compl. ¶ 65.) Further, Holloway alleges that on

May 25, 2018, Jeffrey Teller issued Holloway a "disciplinary performance evaluation alleging

that he had mismanaged the budget." (*Id.* ¶ 48.) In addition, Holloway alleges other occasions

where his supervisor "attacked his leadership," "admonished" him and stated that "he was not

an effective leader," and inquired about Holloway's leadership with his subordinates. (*Id.* ¶¶

32, 37, 41, 42.)

While Holloway denies any responsibility he had for the budget (*id.* ¶ 49), perceived his

own work as satisfactory, and alleges that he had outstanding performance evaluations (*id.* ¶

22), the factual allegations clearly show that his supervisors did not have the same perception. As explained by the Fourth Circuit in *Evans v. Technologies Applications & Service Co.*, "[i]t is the perception of the decision maker which is relevant," not the self-assessment of the plaintiff. 80 F.3d. 954, 960–61 (4th Cir. 1996) (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)).

Holloway also fails to identify different treatment of similarly situated employees outside of his protected class. To be similarly situated, an employee must have "engaged in the same conduct without . . . mitigating circumstances that would distinguish [his] conduct or the employer's treatment of [him] for it." *Heyward v. Monroe*, 166 F.3d 332 (4th Cir. 1998) (table opinion) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1982)). Although the Fourth Circuit has stated that "the comparison [between offenses] will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances," *Cook v. CSZ Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993), "the similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

Holloway alleges that he was replaced by a lesser qualified white female, Karilynn Dunnmeyer. (Compl. ¶¶ 77-79.) However, Holloway does not allege that Dunnmeyer engaged in any of the similar conduct of which Holloway's supervisors complained and for which he was ultimately terminated, such as mismanagement of the budget. Holloway cannot show that Dunnmeyer was similarly situated to him and the Complaint is completely devoid

of allegations that Holloway was treated differently than "similarly situated" employees outside his class.

In sum, Holloway cannot assert any plausible discriminatory termination claim as there are no allegations that any of his supervisors' conduct was based on his race, beyond Holloway's own conclusory determinations.   Such conclusory allegations of racial discrimination are not enough to survive a motion to dismiss.  *See Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted) (when considering a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").  Accordingly, Holloway's claim for discriminatory termination (Count I) must be dismissed.

## II.     Harassment/Hostile Work Environment (Count II)

To establish a *prima facie* case for a hostile work environment, a plaintiff must demonstrate that: "(1) the harassment was unwelcome; (2) the harassment was based on his [disability or age;] (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer."  *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).  In weighing whether conduct was sufficiently "severe or pervasive," courts consider the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.  *Harris v. Forklift Sys.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

The Fourth Circuit has set a "high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).  The Fourth Circuit has recognized that,

> [w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard.  Some rolling with the punches is a fact of workplace life.  Thus, complaints premised on nothing more than "rude treatment by [coworkers]," "callous behavior by [one's] superiors," or "a routine difference of opinion and personality conflict with [one's] supervisor," are not actionable under Title VII.

*Id.* at 315-16 (quoting *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000)).

Holloway's factual allegations are insufficient to "raise a right to relief above the speculative level." *McLeary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).  Holloway alleges sporadic incidents, none of which were physically threatening, and none of which were extremely serious.  (*See* Compl., ECF No. 1.)  Holloway asserts that: Pindale ordered him to work with the Deputy Director of Human Resources instead of Pindale (*id.* ¶¶ 18, 21); Pindale asked Holloway's subordinates if they felt "safe" under Holloway's leadership (*id.* ¶ 33); Holloway had to attend a meeting one and a half hours before his regular start time (*id.* ¶ 54); Teller undermined Holloway's authority over safety concerns at the Academy (*id.* ¶¶ 38-40); Teller generally "berated" and publicly yelled at Holloway in front of his peers (*id.* ¶¶ 41, 47, 55); and Teller slammed documents on the table in a meeting with Holloway (*id.* ¶ 57).

While these allegations establish that Holloway subjectively perceived his work environment as hostile, Holloway's examples do not describe harassment that the Fourth Circuit has found to be severe or pervasive enough to plausibly allege an objectively hostile work environment.  *See, e.g.*, *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) (hostile work environment where African-American plaintiff continuously exposed to racist comments about African Americans by his supervisor, including the use of the n-word); *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009) (hostile work environment claim survived where African-American plaintiff's co-workers had "mop-head dolls in their offices … hanging from nooses" and used the n-word in plaintiff's presence daily); *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir. 1995) (hostile work environment where Iranian plaintiff called "local terrorist" on daily basis).  Accordingly, Holloway's hostile work environment claim (Count II) will be dismissed with prejudice.

### III.   Retaliation (Count III)

The elements of a retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action."  *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)).  A protected activity may fall into two categories, opposition and participation.  42 U.S.C. § 2000e-3(a).  The participation clause protects an employee from retaliation where he "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" under Title VII.  *Id.* As for the opposition clause, the Fourth Circuit has held that "protected oppositional activities may include 'staging informal protests and voicing one's own opinions in order to bring

attention to an employer's discriminatory activities,' as well as 'complaints … about suspected violations.'" *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (quoting *Bryant v. Aiken Reg'l Med. Ctrs.*, 333 F.3d 536, 543-55 (4th Cir. 2003)). The protected activity Holloway has engaged in was filing his Equal Employment Opportunity complaints for discrimination.

While Holloway sufficiently alleges both protected activity and an adverse employment action, his Complaint does not sufficiently allege a causal link between the two. This Court has held that an inference of a causal connection exists where the adverse action occurs "shortly after learning of the protected activity." *Cepada v. Bd. of Educ. of Baltimore County*, 814 F. Supp. 2d 500, 515 (D. Md. 2011). Such presence of a "close" temporal relationship between the protected activity and the alleged adverse action can be sufficient to establish a causal connection at the pleading stage. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that alleged "temporal proximity" must be "very close" to satisfy this third element). The Fourth Circuit has not set forth a specific timeframe for what constitutes "very close." *Pascual v. Lowe's Home Centers, Inc.*, 193 Fed. App'x 229, 233 (4th Cir. 2006). However, in cases where the temporal proximity is "missing," "courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

Holloway submitted his first EEO complaint on February 1, 2018 and submitted his third and final EEO complaint on May 29, 2018. (Compl. ¶¶ 31, 53.) Holloway was terminated on August 22, 2018, well over six months after his first EEO complaint and nearly three months after his last EEO complaint. (*Id.* ¶ 65.) Such a lengthy gap between Holloway's

protected activity and his termination does not show the temporal proximity required to state a retaliation claim and, indeed, serves to "negate the inference of discrimination." *See Johnson v. United Parcel Service, Inc.*, No. RDB-14-4003, 2016 WL 4240072, at *6-7 (D. Md. Aug. 11, 2016) (citing *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). Holloway simply has not alleged plausible facts that could assert a causal nexus between his protected activity and his termination. As a result, his retaliation claim under Count III will also be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 4) is GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE.

A separate Order follows.

Dated: August 10, 2020

_____/s/_____

Richard D. Bennett
United States District Judge